UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIRATPAL SINGH,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, et al.,

Defendants.

Case No. 25-cv-04899-WHO

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 62

Plaintiff Karitpal Singh ("Singh") brings this case against defendants the United States Department of Homeland Security ("USDHS"), Secretary of USDHS Kristi Noem, United States Citizenship and Immigration Services ("USCIS"), the Director of USCIS Angelica Alfonso-Royals, United States Immigration and Customs Enforcement ("ICE"), and the Acting Director of ICE Todd Lyons (together, "the government"). Singh alleges that the government's unprompted and sudden dismissal of his asylum application without review after it had been pending for more than three years was in violation of the Administrative Procedure Act, the Immigration Nationality Act, and his constitutional due process rights. The government now moves to dismiss Singh's complaint and argues that I lack jurisdiction over this matter, that Singh has failed to allege that any final agency action was arbitrary and capricious, and that, in any event, Singh has no due process right to contest the dismissal of his asylum application because of his previous status as an alien subject to expedited removal. For the reasons explained below, I disagree with each of the government's arguments. The motion to dismiss is DENIED.

## BACKGROUND

Singh is a native and citizen of India, currently residing in the San Francisco Bay Area. First Amended Complaint ("FAC") [Dkt. No. 54] ¶ 5. He first entered the United States unlawfully on October 15, 2021, along the southern border. FAC ¶ 12. He was apprehended that

United States District Court
Northern District of California

day by DHS agents. *Id.*

Two days later, DHS issued Singh a Notice and Order of Expedited Removal otherwise known as a "Form I-860" pursuant to the Immigration and Nationality Act ("INA") § 235(b)(1), 8 U.S.C. § 1225(b)(1). FAC ¶ 13. DHS did not remove him. FAC ¶ 14. Instead, on November 9, 2021, ICE issued Singh a Notice of Custody Determination stating that he was released from custody because of a preexisting medical condition. FAC, Exh. B [Dkt. No. 54-1] at 10–11. The Notice of Custody Determination noted that the release was "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations." *Id.* at 10. On an Order of Release on Recognizance dated the same day and signed by a deportation officer and a supervisory detention and deportation officer, Singh was informed that he had "been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, [he was] being released on [his] own recognizance provided [he] comply with the following conditions." FAC, Exh. C [Dkt. No. 54-1] at 16. Among other things, the conditions included:

> You must report for any hearing or interview as directed by [ICE] or the Executive Office for Immigration Review.
> You must surrender for removal from the United States if so ordered.
> You must report in writing/person to [a duty officer in San Francisco] on Monday [December 27, 2021].

*Id.*

As of the date of Singh's release, precedent established that individuals subject to expedited removal were not permitted to be released on bond, but were permitted to be paroled pursuant to section 212(d)(5)(A) of the INA. *See Matter of M-S-*, 27 I. & N. Dec. 509, 519 (AG 2019) ("[A]ll aliens transferred from expedited to full removal proceedings after establishing a credible fear are ineligible for bond. . . . [U]nless DHS paroles [such a situated individual] under section 212(d)(5)(A) of the Act, he must be detained until his removal proceedings conclude.").

United States District Court
Northern District of California

At the same time, "the DHS has discretion to put aliens in section 240 removal proceedings even though they may also be subject to removal under section 235(b)(1)(A)(i) of the Act." *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 523 (BIA 2011); *see also Matter of J-A-B- & I-J-V-A-*, 27 I. & N. Dec. 168 (BIA 2017).

After his release, Singh appeared for his December 27, 2021, ICE appointment and expressed fear of returning to India. FAC ¶ 21. At the appointment, ICE issued him a "Form M-444" through which Singh was advised: "You have indicated an intention to apply for asylum or a fear of persecution or return to your country. You will be interviewed by a specially-trained asylum officer to determine if you have a 'credible fear of persecution' or a 'credible fear of torture.' You will be detained until that interview takes place." *Id.* Nonetheless, Singh was never detained. *Id.*

On March 21, 2022, with the support of counsel, Singh filed a "Form I-589," an Application for Asylum and for Withholding of Removal with USCIS. FAC ¶ 22; *see also* FAC, Exh. E [Dkt. No. 54-1] at 22–42. USCIS deemed the application filed and issued a notice of receipt on April 8, 2022. FAC ¶ 22–23. In the notice, USCIS informed Singh: "You may remain in the U.S. until your asylum application is decided." FAC, Exh. F [Dkt. No. 54-1] at 44. Singh then applied for an employment authorization document ("EAD") pursuant to 8 C.F.R. § 274a.12(c)(8), a step available only to those who have "filed a complete application for asylum or withholding of deportation or removal." FAC ¶ 24. USCIS approved Singh's EAD application on October 28, 2022, and issued him an EAD with an expiration date of October 27, 2024. Singh applied to renew his EAD in July 2024. FAC ¶ 26.

On April 25, 2025, USCIS issued Singh a Request for Evidence concerning his EAD renewal, seeking additional information about his eligibility. FAC ¶ 27. Then, without notice or an opportunity to be heard, the San Francisco Asylum Office dismissed Singh's application for asylum on May 12, 2025. FAC ¶ 28. In the Notice of Dismissal, USCIS stated that "DHS records

3

indicate that [Singh was] apprehended by DHS officials, placed in expedited removal, and issued a Form-I-860, Notice and Order of Expedited Removal." FAC, Exh. H [Dkt. No. 54-1] at 49. USCIS said that the "asylum office cannot process [Singh's] Form I-589 at this time," and that instead, he would be required to complete a credible fear interview at a later date, given his status as an individual subject to expedited removal.[1] *Id.* Pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), any individual subject to expedited removal claiming a credible fear of persecution "shall be detained for further consideration of the application for asylum." The dismissal of Singh's asylum application resulted in the termination of all ongoing processing of his Form I-589.

Singh first filed a complaint and ex parte application for a Temporary Restraining Order ("TRO") before this court on June 10, 2025. Dkt. Nos. 1, 4. After a hearing on the TRO, I denied Singh's application but allowed parties the opportunity for further briefing on the issues. *See* Order Denying TRO [Dkt. No. 26]; Order Granting Administrative Motion to File Supplemental Brief and Requiring Response [Dkt. No. 31]. Although Singh submitted a brief in support of reconsideration, *see* Dkt. No. 27, the government repeatedly asked for extensions to file its response. *See* Dkt. Nos. 36, 28, 40, 42, 44. On August 22, 2025, the government filed its response, *see* Dkt. No. 47. On September 5, 2025, the parties stipulated to withdraw the motion for reconsideration, instead proposing a date for Singh to submit a revised complaint and a briefing schedule on a motion to dismiss. *See* Dkt. Nos. 50, 52. I granted the stipulation. Dkt. No. 53.

Singh filed his First Amended Complaint on September 12, 2025. In the FAC, Singh alleges four causes of action against defendants: (1) violation of the Administrative Procedure Act ("APA"), FAC ¶¶ 34–42; (2) violation of the Immigration and Nationality Act ("INA")

---

[1] As a result of this litigation, DHS has agreed to postpone any pending credible fear interview until the case has been resolved on the merits. FAC ¶ 31; *see* Dkt. No. 51 (Order Granting Stipulation).

§ 241(a)(1)(A), FAC ¶¶43–45; (3) violation of the INA § 208(a)(2)(B), FAC ¶¶ 46–48; and (4) violation of the due process clause of the Fifth Amendment, FAC ¶¶ 49–53. On December 12, 2025, the government moved to dismiss the complaint. Motion to Dismiss ("Mot.") [Dkt. No. 62]. Singh opposed the motion, and the government replied. *See* Opposition to the Motion to Dismiss ("Oppo") [Dkt. No. 66]; Reply in Support of the Motion to Dismiss [Dkt. No. 74]. I held a hearing on the motion on February 2, 2026.

## LEGAL STANDARD

### I.      Rule 12(b)(1)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pleaded in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

5

United States District Court
Northern District of California

(citation omitted).  Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003)).

### II.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured

6

by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment."  *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.     Jurisdictional Challenges**

Before addressing the merits of Singh's claims, I must first consider whether I have jurisdiction over his complaint in the first instance.  Typically, the government is immune to suit.  Any "waiver of sovereign immunity must be unequivocally expressed in statutory text."  *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) (internal quotation marks and citation omitted).

As the government here recognizes, Singh brings suit under the APA, which permits limited judicial review.  Mot. 7.  Pursuant to the APA:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.  Only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704.  Despite this exception, the government contends that Singh is precluded from bringing this case because: (1) section 1252(a)(2)(A) of the INA bars judicial review of aliens placed in expedited removal proceedings; and (2) USCIS's dismissal of Singh's asylum application is not a "final agency action" under the APA.  Mot. 7–10.  I address each in turn.

**A.  Section 1252(a)(2)(A) of the INA**

The INA provisions disallowing judicial review of matters concerning expedited removal f

United States District Court
Northern District of California

orm the basis of the government's argument.  Mot. 7–9; Reply 2–5.  8 U.S.C. § 1252(a)(2)(A), entitled "Judicial review of orders of removal," reads: "no court shall have jurisdiction to review . . . any individual determination or to entertain any other cause of claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) [on expedited removal] of this title," with the exception of lawsuits sounding in habeas corpus or systematic validity.  *See* 8 U.S.C. § 1252(e)(2),(3).  Because the government views Singh's complaint as a challenge to the government's order of expedited removal, it contends that I may not review his case.  Mot. 8.

The government contends that Singh challenges his 2021 order of expedited removal.  It cites *Martinez v. Garland*, No. 8:20-CV-0977-PX, 2021 WL 4060434, *1 (D. Md. Sept. 7, 2021), in support.  *Id.*  In *Martinez*, one of the plaintiffs arrived at the Mexican border in 2004.  .  The government issued plaintiff a Notice and Order of Expedited Removal, and a Notice to Alien Ordered Removed/Departure Verification.  The plaintiff signed the latter document and left the United States.  *Id.* at *2.  Three days later, she re-entered the United States, was not apprehended, and lived in this country undetected for fifteen years.  *Id.*

In 2019, the plaintiff attempted to obtain permanent lawful status in the United States and learned she was ineligible due to her violation of the 2004 expedited removal order.  *Id.*  She argued that because of the government's failure to obtain her signature on the Notice and Order of Expedited Removal form, it was invalid.  *Id.*  The court held that "[a]lthough [plaintiff] frames the issue for resolution as the government's denial of her immigrant visa application in 2019, her claims are 'nothing more than indirect attacks' on the 2004 expedited removal order" and concluded it lacked jurisdiction over the matter.  *Id.* at *4 (citation omitted).

The government likens *Martinez* to Singh's case.  Mot. 8 ("This case is no different.").  But this case is different.  In *Martinez*, the plaintiff left the United States pursuant to the active order of expedited removal and returned three days later in clear violation of that order.  2021 WL

4060434, at *2. The order was still in place when she violated it, enacting the permanent bar from returning to the United States. *Id.* Here, Singh argues that he was given paperwork and assurances by the government that his original status of being in expedited removal had been revoked and was replaced by a status of one subject to "regular" removal proceedings, which made him eligible to apply for asylum, EAD, and remain in the country pending the conclusion of his asylum application. Oppo. 13–14. Unlike in *Martinez*, where the government never made any such indication of plaintiff's change-in-status, here Singh contends that the government acted within its discretion to change his status and now has no right to revoke that change. Oppo. 15.

This case is far different than *Martinez*. I conclude that, as currently pleaded, Singh is not challenging his 2021 order of removal. Instead, this case is focused on whether USCIS's dismissal of Singh's I-589 asylum application, resulting from the government's change of course from its previous decision to withdraw Singh from expedited removal proceedings, was in violation of several laws. These issues are within my jurisdictional purview.[2]

### B. Final Agency Action

The government next argues that I must dismiss Singh's complaint because "USCIS's dismissal of his asylum application is not a final agency action reviewable under the APA." Mot. 9. For an agency action to be "final," it must: (1) "mark the consummation of the agency's decisionmaking process . . . it must not be of a merely tentative or interlocutory nature;" and (2) "be one by which rights or obligations have been determined, or from which legal consequences

---

[2] In Reply, the government turns to *Matter of M-S-*, 27 I. & N. Dec. 509 (AG 2019) and *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020) to support its jurisdictional argument. These cases do not support the government's view that any decision to release Singh and not detain him in his initial years in the United States was in line with his designation as an alien in expedited removal proceedings. Nor do they necessarily support Singh's view that the government's decision to release Singh and treat him as an asylum applicant therefore abandoned his expedited removal status. Neither party has presented a case that is squarely on point. Given the nature of the facial jurisdictional attack, I assume as I must that the allegations in the complaint are true, and draw all reasonable inferences in favor of Singh. *See Wolfe*, 392 F.3d at 362. For those reasons, Singh has met his jurisdictional burden on this issue.

will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted). In support of its view, the government cites to a slew of cases that stand for the long-understood proposition that USCIS's denial of affirmative asylum applications are nonfinal decisions and act "more like a tentative recommendation than a final and binding determination." Mot. 10 (quoting *Dhakal v. Sessions*, 895 F.3d 532 (7th Cir. 2018)); *see also Cabaccang v. USCIS*, 627 F.3d 1313, 1316 (9th Cir. 2010) ("USCIS's denial of [petitioners'] applications is not yet final, and the district court lacked jurisdiction under the APA.").

This case is in a different posture than those in which USCIS has denied an application for asylum following review. In those cases, the availability of "an appeal to a superior agency authority, or an intra-agency appeal to an administrative law judge . . . all render[ed] an agency decision nonfinal." *Cabaccang*, 27 F.3d at 1316. There appears to be no right to appeal or opportunity for a reasoned decision here. Instead of a denied, reviewed, application for asylum, the government issued a Notice of Dismissal of his application. The Notice explicitly states: "Your Form I-589 is dismissed as of 05/12/2025. All processing of your Form I-589 is terminated." FAC, Exh. H [Dkt. No. 54-1] at 49. The Notice does not reference an opportunity for appeal or a right to a  full and fair hearing before an Immigration Judge.

The Notice meets both of the *Bennett* prongs. First, it marks the end of USCIS's decision-making process and ultimate determination not to review Singh's asylum application. *See Bennett*, 520 U.S. at 177–78. It is not tentative or interlocutory; there is no opportunity for review. And "legal consequences will flow" from this decision because it, in effect, would place Singh back in the expedited removal process where he may not pursue his asylum claim absent a successful credible fear interview. *Id.* That situation has different standards, procedures, and detainment requirements than typical removal proceedings.

Further, Singh would not be able to appeal any negative credible fear interview decision in the same way he would be able to appeal any negative asylum application determination. 8 U.S.C.

10

§ 1252(e).  There would be no opportunity to obtain a reasoned review of USCIS's decision.  The APA provides that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."  5 U.S.C. § 704.  If I were to adopt the government's view, that clause of the APA would be rendered meaningless.  I decline to adopt its view.

Singh has adequately pleaded jurisdictional facts to support my review of his case.[3]

## II.   Factual Support of Arbitrariness and Capriciousness

The Supreme Court has held that "[n]ormally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  To adequately plead a cause of action concerning an agency's alleged arbitrary and capricious action, a plaintiff must therefore allege facts that indicate the agency acted in such a manner.  As both parties note, the standard for concluding an agency action was arbitrary and capricious is deferential.  Mot. 10; Oppo. 20.  An agency's duty is to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *State Farm*, 463 U.S. at 43.  As the Supreme Court explained in *F.C.C. v. Fox Television Stations, Inc.*: "the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position.  An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books."  6 U.S. 502,

---

[3] In opposition, Singh includes a discussion of the BIA's recent decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA Sept. 5, 2025).  Oppo. 17–19.  The government does not cite to or address *Yajure Hurtado* in its papers.  I decline to address it here.

515 (2009) (emphasis in original).

The parties dispute whether the government ever used its discretion to take Singh from expedited removal proceedings and place him in regular removal proceedings (i.e. that the agency changed position) in the first instance. Mot. 13; Oppo. 21–22. This presents a mixed question of fact and law, inappropriate for determination at the motion to dismiss stage. As for Singh's allegations that USCIS did reverse course, he adequately pleads why, in his view, USCIS "(1) failed to display awareness that it was changing position; (2) failed to show good reasons for the reversal; (3) failed to consider important aspects of the problem; and (4) offered no rational connection between facts and decision"[4] by pleading facts concerning the government's repeated decisions to release Singh and keep him from detention, FAC ¶¶ 14–21, USCIS's acceptance of his asylum application and issuance of an EAD, FAC ¶¶ 22–25, and USCIS's sudden and unexplained dismissal of Singh's asylum application after his residence in the United States for more than three and a half years. FAC ¶¶ 28–30, 33; Oppo. 20–22.

### III.    Mr. Singh's Due Process Rights

Finally, the government seeks dismissal of Singh's complaint because in its view Singh has no due process rights due to his status as an alien subject to expedited removal,. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). That, of course, presupposes that he is currently in expedited removal, which Mr. Singh pleases is not the case.

The "Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). This applies "once an alien enters the country." *Id.*; *but see Thuraissigiam*,

---

[4] Because I view Singh's claim in the way that he, as opposed to the government, presents it, I am likewise persuaded by several of his statutory arguments raised in opposition. Oppo. 22–25. However, because the government does not address them, I leave them for the parties to re-raise if appropriate at a later stage of this case.

591 U.S. at 139 ("When an alien arrives at a port of entry . . . the alien is on U.S. soil, but the alien is not considered to have entered the country for the purposes of this rule.  On the contrary, aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'").  Important to the allegations included in the FAC is Singh's understanding that he was not "paroled" as contemplated by the Court in *Thuraissigiam*, but instead provided with a lawful, if possibly temporary, means of remaining in the country awaiting the resolution of his asylum application, as contemplated by the Court in *Zadvydas*.  As I have already explained, because I read Singh's complaint to allege the government's arbitrary and capricious reversal of his status as an alien subject to full removal proceedings to an alien subject to expedited removal after more than three years living in the United States, I view his circumstance best guided by *Zadvydas*.  His due process claim survives.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is DENIED.  The case shall proceed.  A case management conference is scheduled for April 14, 2026, at 2:00 p.m. by Zoom videoconference, with a joint case management conference statement to be submitted by **April 7, 2026**.  At that time, a case schedule will be set.

**IT IS SO ORDERED.**

Dated: February 6, 2026



William H. Orrick
United States District Judge